GEORGE BROWN & CO. v. O'CONNOR

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

No. 85

1. MASTER AND SERVANT ⬅289(28)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—SAFER METHOD.

A derrickman, who used a plank scaffolding placed at one end of a building for the purpose of removing the windows, but shown by the proof to have been used whenever convenient, in oiling a shaft of the derrick, is not guilty of contributory negligence as a matter of law in using such plank, though it would have been safer to have oiled the shaft while lying upon the derrick.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1120; Dec. Dig. ⬅289(28).]

2. MASTER AND SERVANT ⬅278(9)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—DEFECTIVE SCAFFOLDING.

While the fact that a bracket supporting a plank on which employés were expected to stand gave way under plaintiff is not conclusive proof of negligence, such fact, together with proof that it was in a defective condition which could have been discovered by reasonable care and that it was wet by steam from the whistle five times a day, was sufficient to support a verdict finding the master negligent, especially where he failed to preserve the bracket so that the jury might see its condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958; Dec. Dig. ⬅278(9).]

3. MASTER AND SERVANT ⬅286(17)—INJURIES TO SERVANT—DISMISSAL OF ACTION—FALSE TESTIMONY.

In an action for injuries to a servant, erroneous testimony, whether mistaken or false, that the opposite end of a plank on which plaintiff was standing when the bracket under it gave way struck him on the head, does not require a dismissal of the complaint; there being sufficient other evidence to support a finding of the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1024; Dec. Dig. ⬅286(17).]

4. WITNESSES ⬅254—REFRESHING RECOLLECTION—OBJECTION.

The use by plaintiff of an affidavit previously verified by his witness to refresh his recollection, so as to qualify and add to his testimony, was not subject to objection that he was impeaching his own witness, though it may have been objectionable because the affidavit was not contemporaneous with the event.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 868–873; Dec. Dig. ⬅254.]

In Error to the District Court of the United States for the Eastern District of New York.

Action by Joseph O'Connor against George Brown & Co. Judgment for the plaintiff, and defendant brings error. Affirmed.

Dilworth & Wurts, of New York City, for plaintiff in error.

David Oggins, of Long Island City, N. Y., for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is an action by a servant to recover damages against his master under article 14 of the Labor Law of New

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

York (Consol. Laws, c. 31), regulating employers' liability, on the ground of defects in the condition of his ways, works, machinery, or plant, which arose from or had not been discovered or remedied owing to the employer's negligence.

The defendant operated a stone yard at Long Island City on which stood a rough frame shed running north and south. At the north end were three planks or scaffolds running in succession east and west at different heights from the floor. These planks were supported on triangular wooden brackets nailed into the perpendicular joists at the north end of the building. They were primarily intended for the use of persons taking out the windows at the beginning of summer and replacing them as winter came on.

The plaintiff was derrickman in charge of a derrick consisting of two steel girders which ran across the building east and west and were connected by diagonal braces. There were wheels at each end of these girders running on rails north and south. Machinery and a crane were carried on the structure.

September 22, 1913, it became necessary for plaintiff to oil a shaft parallel to and beneath the north girder. He could have done so by lying down on his stomach on the girder with one arm around it and reaching under it with his oil can, a method which he had found to be uncomfortable and which he thought to be dangerous. Instead of doing this, he ran the derrick up to the north end of the building, stood on the middle plank, which was some 25 feet above the floor and a convenient distance below the shaft to be oiled. The bracket at the west end of the plank where plaintiff was standing pulled out from the joist, causing him to fall to the floor.

[1] The defendant objects that the plaintiff had no right to use this plank at all, and also that he was guilty of contributory negligence in not oiling the shaft by lying on his stomach; that being a safer way. The proof justified the jury in finding that the use of the scaffold in question was not confined to persons working about the windows, but that the plaintiff and other employés used it whenever they found it convenient to do so. We also think it cannot be said that plaintiff was guilty of contributory negligence as matter of law in oiling the shaft while standing on this plank, even if lying on the girder would have been safer. These questions were fairly submitted to the jury, and they have passed upon them favorably to the plaintiff.

[2] The real question is whether there was evidence that the defendant was guilty of negligence. That the bracket broke and the plank fell is not in itself conclusive proof of negligence, but, taken together with other circumstances, it may prove negligence. A platform on which it is intended that people shall stand should be able to support them, and, when it proves insufficient for this use, a duty of explanation at least lies upon the defendant. It would have been a very proper and very natural precaution for the defendant to preserve this bracket so that the jury might see the character of the wood and of the nails. This was not done. The testimony on these points was conflicting, but there was enough, if believed, to show that the bracket was in a defective condition which could have been discovered and

remedied by reasonable care in inspection. Among other things, it was shown that a steam whistle which was blown five times a day was immediately under it. The effect of a continuous process of wetting and drying might well have weakened and rotted the wood or rusted the nails.

[3] The plaintiff testified that when the bracket gave way he held onto the shaft with one arm, but was knocked off by the plank striking him on the head. In view of the length of the plank, 17 feet, and the distance from the ground, 25 feet, and the plaintiff's position near the west end of the plank, it is difficult to credit this statement. The defendant contends that it makes his story so incredible that the court should have dismissed the complaint. We do not think so. That he was mistaken or even testified falsely on this point would not justify the dismissal of the complaint. His whole account was before the jury, and they could have found from it, together with the testimony of other witnesses, that the defendant was negligent, without adopting his statement that the east end of the falling plank struck him on the head.

[4] The plaintiff used an affidavit previously verified by his witness Zuillo to refresh his recollection, so as to qualify and add to his testimony at the trial. Defendant objected on the ground that the plaintiff was impeaching his own witness, which objection Judge Chatfield properly overruled. If the objection had been to the use of the affidavit to refresh the recollection of the witness because not contemporaneous—that is, not made at or near the time of the accident—the ruling might have been different, or, if not, an exception would have raised a different question for our consideration. Putnam v. United States, 162 U. S. 687, 16 Sup. Ct. 923, 40 L. Ed. 1118; Peters v. United States, 94 Fed. 127, 140, 36 C. C. A. 105.

We think the other assignments of error without merit, and the judgment is affirmed.

---
⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes